IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BROWN, | ) |
|         Plaintiff, | ) |
| vs. | ) Case No. 10−cv−0397−MJR−SCW |
| LEE RYKER, DONALD GAETZ, and CHRISTINE BOYD, | ) |
|         Defendants. | ) |

## MEMORANDUM & ORDER

**REAGAN, District Judge:**

      Plaintiff James Brown brings this civil rights action pursuant to 42 U.S.C. § 1983. Brown alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment. Before the Court is Defendants' Motion for Summary Judgment (Doc. 33). For the reasons explained below, the motion is **DENIED**.

### PROCEDURAL HISTORY

      In May 2010, pursuant to 42 U.S.C. § 1983, Plaintiff James Brown sued three officials at the Illinois Department of Corrections' (IDOC's) Lawrence Correctional Center (Lawrence) for alleged violations of his Eighth Amendment rights. According to the Complaint, Lee Ryker (Lawrence's Warden), Donald Gaetz (Lawrence's Assistant Warden of Operations), and Christine Boyd (Lawrence's Assistant Warden of Programs) acted with deliberate indifference to a serious health risk by failing to provide sufficient water for Brown's sanitary needs following a water main break. Brown seeks a declaratory judgment that each defendant violated his constitutional rights, and he requests $3 million in compensatory damages, and $3 million in punitive damages. The undersigned judge reviewed the Complaint pursuant to 28 U.S.C. § 1915A, and the Eighth

1

Amendment claims against all three defendants survived. (Doc. 6). Defendants initially raised — but subsequently withdrew — the affirmative defense of failure to exhaust administrative remedies (Doc. 23). The instant motion was filed on January 27, 2012 (Doc. 33), and ripened upon Brown's response on March 29, 2012 (Doc. 47).

**FACTUAL BACKGROUND**

In 2008, Plaintiff James Brown was incarcerated at the IDOC's Lawrence Correctional Center. On June 11, a water main broke in nearby Lawrenceville, Illinois. (Doc. 33-2, 2). Early summer rains had been heavy, and the resulting floodwaters covered the break in the pipe. (Doc. 33-2, 2). It took divers about five days to repair the broken water main and restore service. (Doc. 33-2, 2). At Lawrence, the broken main led to a water shortage.

Defendant (and then-Warden) Lee Ryker issued a memorandum to all inmates on June 14, outlining the following "drastic measures to ensure that all offenders [got] the necessary water supply": inmates could flush toilets three times every 24 hours; one-gallon water containers would be delivered to each offender three times every 24 hours; and ice would be delivered at least twice daily. (Doc. 33-3). According to the affidavit of one correctional officer, inmates "were never deprived of water or access to toilet facilities" during the shortage, since the prison "immediately began providing gallon jugs of water to inmates" and continued to do so until the crisis was over. (Doc. 33-2, 2). The same officer swears that running water was restored to each prison housing unit at least three times per day, which "allowed inmates to use and flush their toilets many times throughout the course of the day." (Doc. 33-2, 3–4).

Plaintiff Brown disagrees with that description of Lawrence during the water crisis, and provides evidence to support his position. In sworn affidavits, twenty inmates swear to largely the same circumstances: that no water was provided for personal hygiene, that the toilet-flushing regimen was insufficient to the point that inmates had to urinate and defecate in plastic bags, and

that inmates were forced to eat — under the strong stench of human waste. (*See* Doc. 47-2, 8–28). No prisoner says that gallon jugs of water were brought to the inmates; to the contrary, most prisoners claim to have received two or three cups of lukewarm water per day. As a counterweight to the prisoner affidavits, Defendants provide Warden Ryker's memorandum, plus the aforementioned affidavit, in which a corrections officer swears that inmates "were not forced to urinat[e] or defecat[e] in plastic bags," and that the inmates' limited ability to flush toilets "did not result in sanitation issues, overflowing toilets, or any other crisis regarding the disposal of human waste." (Doc. 33-2, 4).

The matter having been briefed and the entire record having been thoroughly reviewed, the Court rules as follows.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment, which is governed by FEDERAL RULE OF PROCEDURE 56, is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[1] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials**

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. **Sow v. Fortville Police Dept., 636 F.3d 293, 300 (7th Cir. 2011)**.

**in its pleadings")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. **Anderson, 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010). Accord Anderson, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

Finally, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).** At summary judgment, the Court considers the facts in a light most favorable to the non-movant — here, Brown. **Srail v. Vill. of Lisle, 588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in Brown's favor. **Id.; Nat'l Athletic Sportswear, Inc., 528 F.3d at 512.**

## ANALYSIS

Defendants argue they should be insulated from Eighth Amendment liability because they responded to the water main break with reasonable measures: a plan that allowed inmates to flush toilets three times per day, required a gallon of water to be delivered to all inmates three times per day, and required ice delivery for each inmate twice per day. (*See* Doc. 33-3, 11). But, Plaintiff

4

counters that the actions outlined in Warden Ryker's memo "were only a process on paper and not in reality." (Doc. 47-1, 6). The evidence could support a verdict for Plaintiff on that theory, and that is enough to survive summary judgment.

Though the Constitution does not mandate comfortable prisons, it forbids inhumane ones. **Farmer v. Brennan, 511 U.S. 825, 832 (1994).** The conditions of a prisoner's confinement are subject to the Eighth Amendment's prohibition of "cruel and unusual punishments." **Id.; U.S. CONST. amend. VIII.**[2] Inmates must be confined under conditions that provide for their basic human needs. **Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 664 (7th Cir. 2012) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).** The Eighth Amendment does not require the most intelligent, progressive, humane or efficacious prison administration. **Oliver v. Deen, 77 F.3d 156, 161 (7th Cir. 1996)**. Nor must prisons provide prisoners with purer air, healthier food, or cleaner water than is enjoyed by substantial numbers of free Americans. **Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001).** Nevertheless, prison officials have a duty to provide inmates with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." **Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006) (internal citations and quotation marks omitted). See also Farmer, 511 U.S. at 832 ("officials must provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care"); Townsend v. Fuchs, 522 F.3d 765, 772 (7th Cir. 2008) (officials may not deny inmates the minimum civilized measure of life's necessities).**

Determining whether an inmate's Eighth Amendment right to humane conditions of confinement was violated requires a two-part examination. **Estate of Miller v. Tobiasz, -- F.3d ----, 2012 WL 1871649, at \*2 (7th Cir. May 24, 2012).** The test has an objective component and a subjective component. **Id.** First, the deprivation must be objectively, sufficiently serious. **Id.**

---

[2] The Eighth Amendment's ban on cruel and unusual punishments is made applicable to the States by the Fourteenth Amendment. **Hutto v. Finney, 437 U.S. 678, 685 (1979).**

**(quoting *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)).** Here, Defendants do not contest the objective element, so the motion turns on the second, subjective element: whether the prison officials acted with the culpable mental state known as deliberate indifference. ***Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).**

To make a showing on the subjective prong, a plaintiff must show that a prison official knew about a risk of harm, had the ability to prevent the harm, and failed to do so. ***Mays*, 575 F.3d at 648.** Subjective deliberate indifference is a mental state akin to recklessness. ***Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).** To be liable, a defendant must have had subjective awareness of a substantial risk of serious harm. ***Sanville*, 266 F.3d at 734**. Showing a defendant should have known about a risk of harm is not enough, ***Townsend*, 522 F.3d at 773,** but subjective awareness "can be established by inference from circumstantial evidence, including evidence that the risk was so obvious that a jury may reasonably infer" a defendant's actual knowledge. ***Vinning-El v. Long*, 482 F.3d 923, 924–25 (7th Cir. 2007) (internal citations and quotation marks omitted).** However, reasonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful. ***Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997). *See also Long v. Steepro*, 27 F. App'x 625, 627 (7th Cir. 2001) ("Officials who take reasonable steps to prevent harm to a prisoner cannot be held liable for subsequent injuries, even if the harm is not averted.").**

Here, viewing the facts in the light most favorable to Brown, the risks were so obvious that a jury could infer Defendants had actual knowledge of those risks, despite the plan articulated in Warden Ryker's memorandum. Executing Warden Ryker's plan (and in Ryker's case, creating the plan) in response to the water shortage is a reasonable measure, given the water shortage. But the shortage lasted at least five days (at least three days after Ryker's memo was issued), so the mere existence of Ryker's memorandum is not sufficient to insulate Ryker and his

6

two assistant wardens from liability. Neither Ryker's memorandum nor any other evidence evinces Defendants' mental state *after* Ryker sent the memo.

After Ryker initiated his plan, some prisoners (they claim) were only given two small cups of water per day and were still living among, and eating in close proximity to, over-filled toilets and bags full of human waste. Defendants point to prison shift reports, which indicate that correctional officers passed out water during some shifts, but the reports do not indicate the amount of water distributed. (*See* Doc. 33-3, 16, 20, 22, 24). Plaintiff and Defendants present conlicting assertions regarding whether inmates had enough time and water to flush their waste. Plaintiff's evidence suggests that, while Ryker had articulated a reasonable plan to deal with the water shortage, that plan was not being followed.[3] Neither Ryker's memorandum, nor any other uncontroverted evidence contradicts Plaintiff's evidence regarding the time period *after* Ryker's plan was initiated, when (allegedly) inmates were receiving two cups of water per day and living among bags of feces.

The alleged conditions could be found to deny Brown the minimum civilized measure of life's necessities. A reasonable jury could conclude the warden and two of his assistants knew about the situation in their inmates' cells and Brown's conditions of confinement. **See Vinning-El, 482 F.3d at 925 (given the cell conditions — including the presence of feces — a reasonable jury could infer that prison guards working in the vicinity necessarily would have known about the cells conditions); Isby v. Clark, 100 F.3d 502, 505–06 (7th Cir. 1996) ("[I]f the conditions were truly as dreadful as [Plaintiff] claims, the defendants" — a former prison supervisor and assistant supervisor — "would in all probability have" satisfied the subjective prong).**

---

[3] Though Mr. Brown's response brief appears to cite his own deposition at times, neither party attached that deposition to their brief. However, as indicated, the prisoners' affidavits are sufficient to raise a genuine issue of material fact for trial.

In short, Defendants are not entitled to judgment as a matter of law. It may be that Defendants took reasonable actions to abate the Lawrence water crisis, but knew nothing about their subordinates' failure to execute a sanitation plan. It may be that the twenty inmate affidavits that describe the Lawrence prisoners' plight are overstated or false, and that prison guards (and Defendants) did their best to respond to the water shortage. But, it may also be that Defendants Ryker, Gaetz and Boyd knew about and ignored a prison full of inmates who, despite a preliminary and well-intentioned plan drawn up by Defendants, were being forced to live with an inhumane amount of water among plastic bags in which they had been forced to defecate. Defendants' motion boils down to a denial that they ignored any unsanitary or hazardous conditions, but Plaintiff has adduced evidence to the contrary. Competing versions of events and credibility determinations fall within the fact-finder's purview, and are not properly resolved at summary judgment. **See Townsend, 522 F.3d 765 (dispute over whether a prison official knew about inmate cell conditions was "a good old-fashioned swearing contest" and thus not appropriate for summary judgment).** Summary judgment is not warranted here.

## QUALIFIED IMMUNITY

Qualified immunity protects officers performing discretionary functions from civil liability if their conduct does not violate clearly established constitutional rights that a reasonable person would know about at the time. **Mustafa v. City of Chicago, 442 F.3d 544, 548 (7th Cir. 2006).** In evaluating a qualified immunity claim, a court must ask two things: (1) whether the facts the plaintiff alleged "make out a violation of a constitutional right," and (2) if so, whether that right "was clearly established at the time of defendant's alleged misconduct." **Van den Boesch v. Raemisch, 658 F.3d 778, 788 (7th Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).** Courts may address either prong first. **Pearson, 555 U.S. at 236.**

8

As discussed above, Brown's Eighth Amendment claim is a viable one. Furthermore, during 2008, when the alleged misconduct occurred, Brown's rights were unquestionably established. A prison official's general duty to provide humane conditions of confinement has long been a part of Eighth Amendment jurisprudence, **see Farmer, 511 U.S. at 832,** as has the more specific duty to provide adequate sanitation, **see Gillis, 468 F.3d at 493; Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980).** The instant case hinges on Defendants' responses to the water main break in light of what they knew, not in light of what Eighth Amendment rights a reasonable person would have known about. Defendants are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 33) is **DENIED**. The case remains set for a final pretrial conference on June 14, 2012, and for a jury trial on July 9, 2012.

**IT IS SO ORDERED.**

**DATED:  June 12, 2012**

                **s/ *Michael J. Reagan***
                **MICHAEL J. REAGAN**
                **UNITED STATES DISTRICT JUDGE**